38 F.3d 1217
NOTICE: Sixth Circuit Rule 24(c) states that citation of unpublished dispositions is disfavored except for establishing res judicata, estoppel, or the law of the case and requires service of copies of cited unpublished dispositions of the Sixth Circuit.
 UNITED STATES of America, Plaintiff-Appellee
v.
Jimmy Guy RODGERS and Virginia Rodgers, Defendant-Appellants
 Nos. 93-6220, 93-6221.
 United States Court of Appeals, Sixth Circuit.
 Oct. 25, 1994.
 
 Before: RYAN and BATCHELDER, Circuit Judges, and JOINER, District Judge.*
 PER CURIAM.
 
 
 1
 In April 1993, Jimmy and Virginia Rodgers entered conditional guilty pleas to conspiracy to possess in excess of one hundred grams of methamphetamine with intent to distribute, in violation of 21 U.S.C. Sec. 846, and carrying and using a firearm in relation to a drug-trafficking crime, in violation of 18 U.S.C. Sec. 924(c). On appeal, the defendants contest the denial of their motions to suppress evidence seized pursuant to an allegedly invalid search warrant. We affirm.
 
 
 2
 * In June 1992, Ralph Peperone, a detective with the Memphis Police Department's organized crime unit, received information from a confidential informant. On the basis of that information, Detective Peperone signed an affidavit in support of a search warrant. The affidavit read as follows:
 
 
 3
 [A]ffiant has spoke [sic] with a reliable informant of Memphis, Shelby County, Tennessee, who has given true and correct information in the past. This reliable informant advised that within the past five (5) days of June 22, 1992, this reliable informant has observed the male white known as "Spot" and his wife storing and selling crystal methamphetamine from 4101 Kenosha. This occurred in Memphis, Shelby County, Tennessee.
 
 
 4
 The affidavit did not identify either of the defendants by name. Rather, the affidavit contained a physical description of the persons reportedly at the premises to be searched:
 
 
 5
 [a] male white known as "Spot," 6'5" tall, 300 lbs., approximately 36 years of age, numerous tattoos, brown curly hair, a beard and his wife, a female white, late twenties, numerous tattoos, skinny build, long brown hair.
 
 
 6
 A magistrate judge of the Tennessee General Sessions Court issued a warrant for the search of the persons and premises described in the affidavit. In making her determination of probable cause for the search, the magistrate relied solely on the affidavit. Two days later, June 24, 1992, Detective Peperone and a team of state police officers executed the warrant. The search revealed several firearms and a quantity of crystal methamphetamine.
 
 
 7
 Arguing that the warrant lacked probable cause, the defendants moved to suppress the evidence found in the search. After an evidentiary hearing, the federal magistrate recommended that the defendants' motions to suppress be denied. Applying Illinois v. Gates, 462 U.S. 213 (1983), the magistrate found the search warrant invalid because the supporting affidavit nowhere stated the basis for the informant's conclusion that the substance stored and sold from 4101 Kenosha was crystal methamphetamine. The magistrate reasoned that a basis for the conclusion was necessary because, as Detective Peperone himself testified, it is nearly impossible visually to distinguish crystal methamphetamine from other common household products such as granulated sugar.[1]
 
 
 8
 Applying United States v. Leon, 468 U.S. 897 (1984), the magistrate nevertheless held the search to be constitutional because Detective Peperone and his team of officers acted in good faith in executing the warrant and because the executing officers' reliance on the facially valid warrant was objectively reasonable. The magistrate explained that the affidavit was completed in the "common way."
 
 
 9
 The district court denied the motions to suppress, but through alternative reasoning. Relying on United States v. Pelham, 801 F.2d 875 (6th Cir.1986), cert. denied, 479 U.S. 1092 (1987), the district court upheld the state magistrate's finding of probable cause. In a footnote, the district court agreed with the federal magistrate that the Leon good-faith reliance exception would be applicable were the warrant invalid.
 
 
 10
 On appeal, the defendants again attack the sufficiency of the affidavit, arguing that the affidavit failed to support probable cause because it provided no basis for assessing the informant's purported ability to tell cocaine from other white powders commonly found in the household.[2]
 
 II
 
 11
 First, the defendants assert that state law, not federal law, is the proper measure of the constitutional validity of a search and seizure pursuant to a warrant. An affidavit in support of probable cause may be based on hearsay from an informant. Where this is the case, the Tennessee Supreme Court adheres to the two-pronged Aguilar-Spinelli test, which requires the affidavit accompanying the warrant to indicate the informant's credibility and the basis of his knowledge. See State v. Jacumin, 778 S.W.2d 430 (Tenn.1989) (citing Aguilar v. Texas, 378 U.S. 108 (1964), and Spinelli v. United States, 393 U.S. 410 (1969)).
 
 
 12
 In Illinois v. Gates, 462 U.S. 213 (1983), the United States Supreme Court rejected the Aguilar-Spinelli test in favor of a more flexible test based on the totality of the circumstances. Application of Tennessee law would therefore mandate a more rigorous, technical assessment of the affidavit. The question of whether federal or state law applies is reviewed de novo. United States v. Allen, 954 F.2d 1160, 1166 (6th Cir.1992).
 
 
 13
 It is beyond contention that federal law applies to the evaluation of whether the affidavit properly supported issuance of the warrant. In reviewing the denial of a motion to suppress evidence in a federal prosecution, this court looks only to federal constitutional standards to determine the lawfulness of a search pursuant to warrant by state officers acting under state authority. United States v. Wright, 16 F.3d 1429, 1437 (6th Cir.), cert. denied, 114 S.Ct. 2759 (1994). The existence of stricter state standards governing search warrants is irrelevant. Id. Therefore, in analyzing the validity of the warrant, the federal magistrate and the district court properly determined that the federal standard enunciated in Illinois v. Gates is applicable.
 
 III
 
 14
 Under the Fourth Amendment, probable cause exists where the information before the magistrate at the time of the warrant's issuance provides a substantial basis for concluding that a search would reveal evidence of wrongdoing. Gates, 462 U.S. at 236; see also United States v. Leake, 998 F.2d 1359, 1363 (6th Cir.1993). As discussed, the Supreme Court in Gates adopted a totality-of-the-circumstances test for determining whether an affidavit based on an informant's tip established probable cause for issuance of a warrant. Even though Gates rejected the exacting, two-pronged Aguilar-Spinelli test, the Supreme Court emphasized that an informant's reliability and basis of knowledge remain "highly relevant" in the totality-of-the-circumstances analysis. Gates, 462 U.S. at 230. In this analysis, the formerly independent elements of reliability and basis of knowledge should be considered together:
 
 
 15
 [A] deficiency in one may be compensated for, in determining the overall reliability of a tip, by a strong showing as to the other, or by some other indicia of reliability.
 
 
 16
 Id. at 233. Thus, an affidavit based on a confidential informant's tip need not detail the observations from which the informant concluded the particular substance was a narcotic. However, if the affidavit simply contains a conclusory statement such as "the informant saw cocaine," the affidavit must also contain strong indicia of the informant's reliability. Accord, e.g., United States v. Finch, 998 F.2d 349, 352 (6th Cir.1993) (based on unnamed informant's record of furnishing reliable information in narcotics cases, inference of familiarity with drugs reasonable); see also United States v. Skramstad, 649 F.2d 1259, 1263 (8th Cir.1981) (same).
 
 
 17
 The affidavit in this case provided neither an indication that the informant had previously participated in narcotics investigations nor any other reason to infer the informant's familiarity with drugs. It contained no objective facts to support the informant's statement that the defendants were illegally "storing and selling" drugs. Furthermore, the affidavit did not identify the defendants by name.
 
 
 18
 On the authority of United States v. Leon, 468 U.S. 897 (1984), however, we decline to rule on the validity of the warrant. Under Leon, whether there was an unlawful search and whether the fruits of that search should be suppressed are separate questions; the exclusionary rule does not bar admission of evidence "obtained in objectively reasonable reliance on a subsequently invalidated search warrant." Id. at 922. A court of appeals may choose to decide a case on the basis of the Leon exception to suppression without addressing the constitutionality of the search. Id. at 924-25. Based on the following analysis, we hold that suppression would not be the appropriate remedy in this case even assuming arguendo that the search warrant was unsupported by probable cause.
 
 
 19
 Under Leon, suppression is the appropriate remedy in the rare case in which the police officers or magistrate acted in an objectively unreasonable manner. The Leon Court identified four situations in which the so-called "good faith exception" would not apply: (1) where the affidavit contains knowing or reckless falsity; (2) where the issuing magistrate failed to act in a neutral and detached manner; (3) where the supporting affidavit was " 'so lacking in indicia of probable cause as to render official belief in its existence entirely unreasonable' "; and (4) where the warrant is so facially deficient, through, for example, lack of particularity regarding the place to be searched or the things to be seized, as to negate the possibility of objectively reasonable reliance. Id. at 923 (citation omitted).
 
 
 20
 The defendants do not suggest that Detective Peperone knowingly misrepresented the informant's statements in the affidavit or that the warrant lacked particularity in the place to be searched or the things to be seized. Instead, the defendants contend that the remaining two situations are present in this case: The state magistrate "rubber stamped" the affidavit, and the affidavit was grossly lacking in indicia of probable cause. Whether the officers reasonably and in good faith relied on the search warrant is a question of law. Therefore, our review is de novo. United States v. Bowling, 900 F.2d 926, 930 (6th Cir.), cert. denied, 498 U.S. 837 (1990).
 
 
 21
 The defendants offer no arguments to support their contention that the state magistrate departed from a neutral and detached assessment of the affidavit. Therefore, we have no reason to find that the magistrate merely rubber-stamped the affidavit.
 
 
 22
 Next we consider whether the affidavit in this case grossly lacked indicia of probable cause. Reliance on a "bare bones" affidavit is objectively unreasonable. Leon, 468 U.S. at 922-23 & n. 24. A "bare bones" affidavit provides no information on why a source is reliable or how a source knows certain facts; instead, it contains mere conclusions, suspicions, or beliefs of the affiant or an informant. See Finch, 998 F.2d at 352; United States v. Ciammitti, 720 F.2d 927, 932 (6th Cir.1983), cert. denied, 466 U.S. 970 (1984).
 
 
 23
 At the time of the issuance and execution of the warrant, June 1992, this circuit's leading decision on the sufficiency of affidavits was United States v. Pelham, 801 F.2d 875 (6th Cir.1986), cert. denied, 479 U.S. 1092 (1987). In Pelham, this court concluded that the affidavit supported probable cause for the warrant. Id. at 878. The affidavit in Pelham differed from the affidavit in the instant case in two respects: the informant was named, and the drug involved was marijuana, not crystal methamphetamine. The district court in this case found the first difference insignificant because Detective Peperone attested to the informant's reliability. As to the second difference, the district court reasoned,
 
 
 24
 Although the affidavit could have been more detailed, the state magistrate could have concluded that it was reasonably probable that the substance that defendants were storing and selling was crystal methamphetamine.
 
 
 25
 For further support, the district court cited the general propositions that probable cause is a matter of probabilities, not prima facie cases, and that ordinary citizens cannot be expected to relate their observations in perfect detail.
 
 
 26
 The district court performed this analysis in the context of determining whether the affidavit provided probable cause for the issuance of the warrant. The question in the context of the Leon exception is more elastic: Would a reasonable officer believe that the warrant was facially valid? In light of Pelham, we answer that question in the affirmative.
 
 
 27
 Again, we do not review today the district court's conclusion that probable cause supported the warrant. We do, however, find the district court's reliance on Pelham to be persuasive in the Leon analysis. A reasonable officer would not necessarily consider critical the difference between the named informant in Pelham and the unnamed informant in this case. Unlike the confidential informant in this case, the named informant in Pelham had not previously provided accurate information to the police. Likewise, a reasonable officer would not inevitably consider the kind of drug observed to bear significantly on the probable cause calculus. In Pelham, this court did not rely on the distinctiveness of the appearance of marijuana as a basis for the finding of probable cause. Rather, we merely stated that "[i]n a practical sense, there could hardly be more substantial evidence of the existence of the material sought and its relevance to a crime than" an informant's "direct viewing" of the drug. 801 F.2d at 878. Moreover, the informant in this case witnessed the sale of the substance. This lends credence to the officers' good faith reliance on the affidavit, because sugar and other white, powdery household products are usually not sold from the home.
 
 
 28
 The defendants rely on United States v. Baxter, 889 F.2d 731 (6th Cir.1989), the only case in which the Sixth Circuit has held an affidavit to be "bare bones." Baxter, however, involved an officer's knowing misrepresentation of an anonymous, unavailable informant as a "confidential informant." Id. at 734. Baxter is thus distinguishable from this case, which involves no allegations of misrepresentation.
 
 
 29
 United States v. Barrington, 806 F.2d 529 (5th Cir.1986), also cited by the defendants, is distinguishable as well. Barrington involved an affidavit which stated only that the officer " 'received information from a confidential informant' " who is " 'known to [the officer] and has provided information in the past that has led to arrest and convictions.' " Id. at 531. The Fifth Circuit characterized this affidavit as "bare bones." Id. Detective Peperone's affidavit contained some basis for the informant's knowledge, while the Barrington affidavit contained absolutely no statement regarding the informant's basis of knowledge. Therefore, Barrington is not persuasive.
 
 IV
 
 30
 Based on the foregoing, we hold that the warrant was not "bare bones" and therefore that the officers' reliance on the warrant was objectively reasonable. Accordingly, the district court correctly denied the defendants' motions to suppress. See Leon, 468 U.S. at 922-26. The judgment of the district court is AFFIRMED.
 
 
 
 *
 The Honorable Charles W. Joiner, Senior District Judge for the Eastern District of Michigan, sitting by designation
 
 
 [1]
 The defendants direct this court's attention to that testimony:
 Q: You presented to the magistracy just a statement that that was crystal methamphetamine being stored and sold by Spot and his wife at that residence?
 A: That's correct.
 Q: Would it be fair to say that just the visual--looking at crystal methamphetamine visually, that it would be difficult, if not impossible, to distinguish it from some other household item?
 A: Yes, sir.
 Q: Granulated sugar for example?
 A: Yes, sir.
 Q: And so there has to be something other than what you see to let you know it's crystal methamphetamine?
 A: That's correct.
 
 
 [2]
 The defendants also suggest that as a matter of law, an affidavit based on a confidential informant's tip cannot support probable cause unless corroborated by the police. This is wholly unfounded. As Gates makes clear, an anonymous tip must be corroborated, at least in part. Where the tip comes from a confidential informant, however, the affiant/police officer may attest to the informant's reliability, provided the affidavit reflects more than a mere conclusion that the informant is reliable. Compare United States v. Finch, 998 F.2d 349, 352 (6th Cir.1993) (probable cause found without corroboration of confidential informant's tip) with United States v. Smith, 783 F.2d 648, 649-51 (6th Cir.1986) (corroboration required where affidavit lacked adequate indications of confidential informant's reliability)